*Haynes, Dunning & Haynes,* for plaintiffs in error.
*Barnum & Graham,* for defendants in error.

---

## EXPRESS COMPANIES *v.* RAILROAD COMPANIES.

*( United States Circuit Court, Eighth District, heard at St. Louis, Feb., 1882.)*

1. THE EXPRESS BUSINESS has, by the necessities of commerce and usages of those engaged in transportation, become a distinct branch of the carrying trade, for the delivery of small and valuable packages.

2. RAILROADS MUST AFFORD FACILITIES FOR. It is the duty of railroads to provide suitable conveyances, by special cars or otherwise, for the safe and proper transportation of express matter, including messengers, which facilities must be extended on equal terms to all engaged *bona fide* in the express business.

3. COMPENSATION TO RAILROADS. Railroads can only charge such express companies a reasonable rate of compensation for such service; if this cannot be agreed upon between the parties, it may be determined by the Courts.

MILLER, Circuit Justice.

In these cases argued before me at St. Louis, with Judges McCrary and Treat, I can do no more than present certain general conclusions at which my mind has arrived in regard to the propositions argued by counsel.

*First*—I am of the opinion, that what is known as the express business is a branch of the carrying trade that has, by the necessities of commerce and the usages of those engaged in transportation, become known and recognized.

That, while it is not possible to give a definition in terms which will embrace all the classes of articles so usually carried, and to define it with precision by words of exclusion, the general character of the business is sufficiently known and recognized as to require the Court to take notice of it as distinct from the transportation of the large mass of freight usually carried on steamboats and railroads.

That the object of this express business is to carry small and valuable packages rapidly, in such a manner as not to subject them to the danger of loss and damage which, to a greater or less degree, attends the transportation of heavy or bulky articles of commerce, as grain, flour, iron, ordinary merchandise, and the like.

*Second*—It has become law and usage, and is one of the necessities of this business, that these packages should be in the immediate charge of an agent, or messenger, of the person or company engaged in it; and to refuse permission to this agent to accompany these packages on steamboats or railroads on which they are carried, and to deny them the right to the control of them while so carried, is destructive of the business and of the rights which the public have in the use of the railroads in this class of transportation.

*Third*—I am of the opinion that, when express matter is so confided to the charge of an agent or messenger, the railroad company is no longer liable to all the obligations of a common carrier, but that when loss or injury occurs, the liability depends upon the exercise of due care, skill and diligence on the part of the railroad company.

*Fourth*—That, under these circumstances, there does not exist on the part of the railroad company the right to open and inspect all packages so carried, especially when they have been duly closed or sealed up by their owners or by the express carrier.

*Fifth*—I am of the opinion that it is the duty of every railroad company to provide such conveyances by special cars, or otherwise, attached to their freight or passenger trains, as are required

for the safe and proper transportation of this express matter on their roads, and that the use of these facilities should be extended on equal terms to all who are actually and usually engaged in the express business.

If the number of persons claiming the right to engage in this business at the same time, on the same road, should become oppressive, other considerations might prevail; but until such a state of affairs is shown to be actually in existence, in good faith, it is unnecessary to consider it.

*Sixth*—This express matter, and the person in charge of it, should be carried by the railroad company at fair and reasonable rates of compensation; and where the parties concerned cannot agree upon what that is, it is a question for the Courts to decide.

*Seventh*—I am of the opinion that a court of equity, in a case properly made out, has the authority to compel the railroad companies to carry this express matter, and to perform the duties in that respect which I have already indicated, and to make such orders and decrees, and to enforce them by the ordinary methods in use necessary to that end.

*Eighth*—While I doubt the right of the Court to fix in advance the precise rates which the express companies shall pay and the railroad companies shall accept, I have no doubt of its right to compel the performance of the service by the railroad company, and, after it is rendered, to ascertain the reasonable compensation and compel its payment.

*Ninth*—To permit the railroad company to fix upon a rate of compensation which is absolute, and insist upon the payment in advance, or at the end of every train, would be to enable them to defeat the just rights of the express companies, to destroy their business, and would be a practical denial of justice.

*Tenth*—To avoid this difficulty, I think that the Court can assume that the rates, or other mode of compensation heretofore existing between any such companies, are *prima facie* reasonable and just, and can require the parties to conform to it as the business progresses, with the right to either party to keep and present an account of the business to the Court at stated intervals, and claim an addition to, or rebate from, the amount so paid.

And to secure the railroad companies in any sum which may be thus found due them, a bond from the express company may be required in advance.

*Eleventh*—When no such arrangement has heretofore been in existence, it is competent for the Court to devise some mode of compensation to be paid as the business progresses, with like power of final revision on evidence, reference to master, etc.

*Twelfth*—I am of opinion that neither the statutes nor constitutions of Arkansas or Missouri were intended to affect the right asserted in these cases; nor do they present any obstacle to such decrees as may enforce the rights of the express companies.

*George F. Edmunds, Clarence A. Seward, J. A. Campbell, F. E. Whitfield, B. M. & C. J. Hughes, Jr., Blair & Perry, Glover & Shepley, S. S. Breckenridge,* attorneys for complainant.

*Dillon & Swayne, Archie Williams, George R. Peck, Broadhead, Slayback & Hæussler, B. C. Brown, E. O. Wolcott, L. K. Bass, T. J. Portis,* attorneys for defendants.